UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODNEY A. LARSON,

       Plaintiff,

       v.                                       No. 11-C-930

BROWN COUNTY, DENNIS KOCKEN,
JOHN ZAKOWSKI, JAMES DROOTSAN, and
WILLIAM POLLARD,

       Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING THE ACTION WITH PREJUDICE

On October 5, 2011, the plaintiff, Rodney Larson ("Larson"), filed a *pro se* complaint against Brown County, Sheriff Dennis Kocken ("Kocken"), and Sergeant James Drootsan ("Drootsan") (collectively, the "Brown County Defendants"); District Attorney John Zakowski ("Zakowski"); Judge John McKay ("McKay"); and Warden William Pollard ("Pollard"), alleging primarily federal constitutional violations, pursuant to 42 U.S.C. § 1983, in connection with Larson's overturned conviction based on an expired statute of limitations. *See State v. Larson*, 801 N.W.2d 343 (Wis. Ct. App. 2011). On July 27, 2012, Judge Charles N. Clevert, Jr., to whom this case was originally randomly assigned, granted in part and denied in part the defendants' various motions to dismiss. (ECF No. 26.) Specifically, the court dismissed: (1) all claims against McKay; (2) claims against Zakowski for charging Larson with attempted murder and failing to investigate other leads; and (3) criminal claims against Pollard. The case was thereafter reassigned to this court based on the parties' consent to magistrate judge jurisdiction.

On March 25, 2013, the remaining defendants filed motions for summary judgment. Larson then filed an "emergency" motion, requesting that the court: (1) extend his time to respond to the summary judgment motions, and (2) reopen discovery. On April 5, 2013, the court granted the first request and ordered briefing on the second. (ECF No. 70.) On April 26, 2013, the court denied without prejudice Larson's request to reopen discovery. (ECF No. 85.) Thereafter, Larson filed responses to the motions for summary judgment filed by the Brown County Defendants and Zakowski, but not Pollard. The motions are now fully briefed and ready for resolution.

## I. PRELIMINARY MATTERS

Before turning to the facts, the court will address two preliminary matters. First, the court finds that two of the defendants' submissions must be disregarded. The Brown County Defendants and Zakowski both filed replies to Larson's responses to their proposed findings of fact. (ECF Nos. 90, 91.) Civil L.R. 56(b)(3)(B), however, only authorizes a reply "to any *additional* facts submitted by the opposing party." (Emphasis added.) Larson did not submit any additional facts, so the defendants' replies were inappropriate.[1] *See generally Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (reaffirming a court's broad discretion to require strict compliance with local rules). Still, to the extent that Larson's responses to the defendants' proposed findings of fact were improper (for example, by failing to cite evidence supporting his claimed disputes or by attempting to insert additional facts), the court will disregard them.

---

[1] Having said that, the copy of Larson's response to Zakowski's motion for summary judgment received by the court (which also contained Larson's responses to Zakowski's proposed findings of fact) was missing page two. (ECF No. 87.) To avoid penalizing Larson for this omission, the court looked to Zakowski's replies to Larson's responses to Zakowski's proposed findings of fact for the limited purpose of obtaining Larson's missing responses.

2

Second, the court finds that Larson must bear the consequences of his failure to respond to Pollard's summary judgment submissions. In accordance with Civil L.R. 56(a), Pollard (as well as the other defendants) sent Larson the text of the federal and local procedural rules governing motions for summary judgment. Larson was therefore aware that his silence is construed as an admission of Pollard's proposed findings of fact for the purposes of the motion. *See* Civil L.R. 56(b)(4). If those admitted facts and other supporting materials show that Pollard is entitled to summary judgment, the court may grant it accordingly. *See* Fed. R. Civ. P. 56(e)(3).

## II. FACTS

On March 6, 1994, the Brown County Sheriff's Department conducted a felony crime scene investigation at the 54 T-Mart in New Franken, Wisconsin. (Plaintiff's Response to the Brown County Defendants' Proposed Findings of Fact ("Pltf. Resp. Brown Cnty. Defs. PFOF") ¶ 1.) Law enforcement interviewed the victim, who stated that her attacker beat her with a pipe and was wearing a dark cloth on his face. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 2-3.) A blood-stained copper pipe and a black scarf were recovered near the crime scene. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 4.) This evidence was submitted to the Wisconsin State Crime Lab but did not yield any leads. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 5.)

More than a decade later, on September 8, 2005, the Crime Lab reported that the DNA profile obtained from the black scarf was "a mixture of DNA from more than one individual," but that "[a] major, male DNA contributor can be separated from this mixture at nine of the analyzed genetic markers," and that the DNA profile of that individual matched Larson's DNA profile in a Wisconsin convicted offender databank, such that the "match should be considered an investigative lead." (Plaintiff's Response to Zakowski's Proposed Findings of Fact ("Pltf. Resp. Zakowski PFOF") ¶ 5; Rice

3

Aff. Ex. D at 34; Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 7-8.) On November 21, 2005, Drootsan applied for a search warrant to collect DNA evidence from Larson, who was incarcerated at the time. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 9.) A Brown County Circuit Court Commissioner signed the search warrant after finding probable cause that Larson's DNA would constitute evidence of the 1994 crime. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 10-11.)

Also on November 21, 2005, Drootsan and another officer met with Larson to execute the search warrant. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 12.) After introducing themselves, the officers read Larson his *Miranda* rights, after which Larson agreed to waive his rights and sign a waiver form. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 13-14.) The officers then proceeded to discuss an unrelated case in which Larson was the victim before moving on to the 1994 matter. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 12, 15; Rice Aff. Ex. D at 43.) Larson consented to Drootsan's execution of the search warrant and collection of two buccal swabs from his cheek.[2] (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 16.)

On January 4, 2006, the Crime Lab issued a supplemental report comparing the buccal swabs to the DNA profile from the black scarf, and concluding that "the probability of randomly selecting an unrelated individual who could be considered a possible source of the major STR DNA partial profile obtained from the scarf . . . is approximately one in 2 billion individuals." (Pltf. Resp. Zakowski PFOF ¶ 5; Rice Aff. Ex. D at 48; Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 18-19.) At some point thereafter, the Sheriff's Department provided the results of their investigation, including all evidence in its original

---

[2] Three years later, on November 5, 2008, Drootsan and another officer conducted a follow-up, recorded interview with Larson, where he again waived his *Miranda* rights. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶¶ 20-23.)

4

form, to the Brown County District Attorney's Office.³ (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 24; Drootsan Supp. Aff. ¶¶ 2-4.)

On December 23 and 31, 2008, criminal complaints were filed in the Brown County Circuit Court, charging Larson with attempted first-degree intentional homicide pursuant to Wis. Stat. §§ 939.32 and 940.01. (Pltf. Resp. Zakowski PFOF ¶ 1; Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 25.) Both complaints were signed by Assistant District Attorney John Luetscher; Zakowski merely notarized the signature on the amended complaint. (Rice Aff. Exs. B, C.) Zakowski had no personal involvement in any aspect of Larson's prosecution, including the charging decision, the filing of the complaints, decisions on whether to investigate other leads, and decisions on whether to provide or withhold evidence from defense counsel. (Pltf. Resp. Zakowski PFOF ¶ 7.) Zakowski also had no personal involvement in any aspect of Larson's arrest, and he never discussed the arrest or prosecution with the Brown County Defendants.⁴ (Pltf. Resp. Zakowski PFOF ¶ 8.)

On January 2, 2009, Larson made his initial appearance, and shortly thereafter, Larson was appointed counsel. (Pltf. Resp. Zakowski PFOF ¶¶ 2-3.) On February 10, 2009, the District Attorney's Office made available to Larson's counsel 145 pages of discovery documents and a security videotape

---

³ Larson's attempt to dispute this fact—by alleging that exculpatory items were "never made part of the discovery"—fails for lack of any evidentiary support. (Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 24.)

⁴ Larson's attempt to dispute these facts—by alleging that Zakowski: (1) relied upon reports from the Sheriff's Department, the Crime Lab, and the victim; (2) reviewed the complaint materials and signed the amended complaint; (3) consulted with the defendants on evidence and strategy through trial; and (4) waited to prosecute Larson until evidence was fabricated and Larson was incarcerated—again fails for lack of any evidentiary support. (Pltf. Resp. Zakowski PFOF ¶¶ 7-8.)

5

of the crime. (Pltf. Resp. Zakowski PFOF ¶ 4.) Neither Zakowski nor anyone else from his office erased audio from the videotape.[5] (Pltf. Resp. Zakowski PFOF ¶ 9.)

While awaiting trial, Larson was an inmate at the Green Bay Correctional Institution, where Pollard was Warden. (Pollard's Proposed Findings of Fact ("Pollard PFOF") ¶¶ 1, 3.) On September 13, 2009, pursuant to a request from Drootsan, Pollard directed a staff member to measure Larson's height and weight. (Pollard PFOF ¶¶ 4-5.) Pollard relayed Larson's information to Drootsan the next day. (Pollard PFOF ¶ 5.) The Wisconsin Department of Corrections also maintains a database providing a public record of convicted offenders' basic information, such as height and weight. (Pollard PFOF ¶ 6.)

On September 30, 2009, Pollard's office received a request from Larson for an extension of his legal loan funds, along with supporting documentation including 36 pages of legal paperwork. (Pollard PFOF ¶ 10.) Pollard referred the request to another staff member, who returned Larson's paperwork with a response on October 2, 2009. (Pollard PFOF ¶¶ 11-13.) Pollard had no knowledge that Larson apparently was planning to use the legal paperwork during his criminal trial, where he continued to be represented by counsel. (Pollard PFOF ¶¶ 17, 19.)

After the Brown County Circuit Court denied Larson's motion to dismiss regarding the statute of limitations, on October 7, 2009, a jury found Larson guilty of attempted first-degree intentional homicide. (Pltf. Resp. Zakowski PFOF ¶ 10; Pltf. Resp. Brown Cnty. Defs. PFOF ¶ 26.) On December 11, 2009, Larson was sentenced to 15 years in state prison. (Pltf. Resp. Zakowski PFOF ¶ 11.)

On June 21, 2011, the Wisconsin Court of Appeals reversed Larson's conviction. *Larson*, 801 N.W.2d at 347. The court first determined that the 1993-94 version of Wis. Stat. § 939.74(2)(a) was

---

[5] Larson's attempt to dispute these facts—by alleging that only an altered CD was made available to the defense—again fails for lack of any evidentiary support. (Pltf. Resp. Zakowski PFOF ¶¶ 4, 9.)

6

"ambiguous with regard to whether a prosecution for attempted first-degree intentional homicide may be commenced 'at any time.'" *Id.* at 345. That is, "[r]easonable minds could differ as to the meaning of the statute." *Id.* After looking to legislative intent, case law from other states, and the respective penalties for the relevant crimes, the court concluded that, under the statute, "a prosecution for attempted first-degree intentional homicide must be commenced within six years." *Id.* at 347. Because Larson's prosecution had begun too late, the judgment was reversed.[6] *Id.*

### III. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[6] On April 27, 2012, the Wisconsin legislature created Wis. Stat. § 939.74(2)(a)2. to read that "[a] prosecution for an attempt to commit [first-degree intentional homicide] . . . may be commenced *at any time*." 2011 Wis. Act 282, § 2 (emphasis added).

7

(1986) (quoting Fed. R. Civ. P. 56). A party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). A mere "scintilla of evidence" in support of the nonmovant's position is insufficient to defeat summary judgment. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

### IV. DISCUSSION

Pollard, Zakowski, and the Brown County Defendants have presented arguments for summary judgment in their favor on all claims. Several arguments reference qualified immunity, which protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To overcome the defendant's invocation of qualified immunity, the plaintiff[] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). The court may address the prongs of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

8

### A. Pollard

In its July 27, 2012, decision, the court allowed Larson to proceed on his claims that Pollard: (1) withheld numerous original exculpatory court documents, which prevented Larson from using these documents during his criminal trial; and (2) obtained and then shared Larson's height and weight with law enforcement without his consent. (ECF No. 26 at 12-13.) Pollard argues, and Larson does not dispute, that Pollard is entitled to summary judgment on both claims. The court agrees.

Regarding the first claim—involving Larson's court documents—Pollard contends that Larson's allegations implicate the constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977) (requiring prison authorities "to assist inmates in the preparation and filing of meaningful legal papers"). In failing to respond to Pollard's motion for summary judgment, Larson obviously has not pointed to any case law indicating that a two-day delay in withholding voluntarily submitted legal documents, without more, violates a constitutional right. On the contrary, the Seventh Circuit has held that, "[s]tanding alone, reasonable delay and inconvenience do not rise to the level of a constitutional deficiency." *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986); *see also Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 306 (7th Cir. 1993) (suggesting that only repeated incidents of interference are actionable). In addition, generally, no constitutional harm can be shown where, as here, a prisoner is represented by counsel at the relevant time. *See Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988).

Regarding the second claim—involving Larson's personal information—Pollard contends that Larson's allegations implicate the Health Insurance Portability and Accountability Act ("HIPAA"), as well as the constitutional right to privacy. The former ground is easily dismissed because "HIPAA does not furnish a private right of action." *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (collecting cases). The latter ground is also insufficient because Larson has not pointed to any case law

9

indicating that a prisoner has a constitutionally protected privacy right in his basic identifying information. Indeed, because Larson's height and weight are not "intimate and personal," and such information was also publicly available through a state database, Seventh Circuit precedent indicates that no constitutionally protected privacy interest would be implicated, even for non-prisoners. *See Best v. Berard*, 837 F. Supp. 2d 933, 938 (N.D. Ill. 2011) (citing *Denius v. Dunlap*, 209 F.3d 944, 956-57 (7th Cir. 2000)). Accordingly, the court will grant summary judgment in favor of Pollard on all claims.

**B. Zakowski**

In its July 27, 2012, decision, the court allowed Larson to proceed on his claims that Zakowski: (1) erased the audio from a security videotape and otherwise withheld and fabricated evidence; and (2) engaged in malicious prosecution in an alleged conspiracy with the Brown County Defendants.[7] (ECF No. 26 at 8-11.) Zakowski argues that he is entitled to summary judgment on both claims. The court agrees.

Regarding the first claim—involving federal constitutional law—"[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). More specifically, for liability to attach to supervisors, "[t]he supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Here, the undisputed facts are that Zakowski had no personal involvement in any aspect of Larson's prosecution or arrest. Larson's arguments to the contrary are pure speculation. And even if Zakowski had been

---

[7] Larson's 42 U.S.C. § 1985 claim against Zakowski is discussed below, in conjunction with the Brown County Defendants.

10

involved in Larson's case, Larson has failed to present evidence tainting Zakowski's showing that his office gave defense counsel all relevant discovery documents and an unedited security videotape.

Regarding the second claim—involving malicious prosecution under Wisconsin law—Larson has the burden of proving, among other things, malice and lack of probable cause. *See Elmer v. Chi. & N.W. Ry. Co.*, 43 N.W.2d 244, 246 (Wis. 1950). Larson indicates that he has satisfied his burden on these elements because the charge of attempted first-degree intentional homicide was knowingly brought after the statute of limitations had expired. This argument must fail, however, because the Wisconsin Court of Appeals determined that the relevant version of Wis. Stat. § 939.74(2)(a) was "*ambiguous* with regard to whether a prosecution for attempted first-degree intentional homicide may be commenced 'at any time.'" *Larson*, 801 N.W.2d at 345 (emphasis added). That is, "[r]easonable minds could differ as to the meaning of the statute." *Id.* Thus, although Larson's conviction was ultimately reversed, there was nothing improper about the prosecution at the time. Accordingly, the court will grant summary judgment in favor of Zakowski on all claims.[8]

**C. The Brown County Defendants**

In its July 27, 2012, decision, the court allowed Larson to proceed on all claims against the Brown County Defendants. (ECF No. 26.) Generally, Larson alleges that the Brown County Defendants: (1) fabricated and withheld evidence; (2) conducted an unconstitutional custodial interview; (3) executed a constitutionally invalid search warrant and engaged in false arrest; and (4) engaged in a conspiracy

---

[8] Because summary judgment is appropriate on other grounds, the court need not address Zakowski's argument regarding prosecutorial immunity.

11

pursuant to 42 U.S.C. § 1985(2).⁹ The Brown County Defendants argue that they are entitled to summary judgment on all claims. The court agrees.

Regarding the first claim—involving use of evidence—Larson argues that the Brown County Defendants, among other things, only provided an edited security videotape to the defense/prosecutor, never provided pictures of the scarf to the defense/prosecutor, and failed to turn over other exculpatory evidence, in violation of his constitutional rights. *See Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) (noting that withholding material exculpatory evidence from the defense/prosecutor and fabricating evidence violate clearly established constitutional rights). The undisputed facts, however, demonstrate that the Brown County Defendants provided the results of their investigation, including all evidence without alteration, to the District Attorney's Office. In contrast to the plaintiff in *Dominguez*, *see id.* at 590, Larson presents no evidence in support of his allegations to the contrary.

Regarding the second claim—involving a custodial interview—Larson argues that, during the execution of the search warrant on November 21, 2005, Drootsan should have given an additional *Miranda* warning before changing topics to discuss Larson's criminal case, and that the interview should have been recorded. But Larson has not pointed to any case law indicating that Drootsan's actions violate clearly established constitutional rights. Indeed, the Supreme Court has long held that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 577 (1987). And back in 2005, even Wisconsin law did

---

⁹ Larson's claim regarding the Brown County Defendants' acquisition of his height and weight may be dismissed for the reasons previously discussed in conjunction with Pollard.

12

not require custodial interviews to be recorded. *See* 2005 Wis. Act 60, § 51(2) (stating that Wis. Stat. § 968.073 first applies on January 1, 2007).

Regarding the third claim—involving the facially valid search warrant and arrest—Larson seems to argue that probable cause was lacking, not because of insufficient factual support, but rather because the statute of limitations had run on his crime of conviction. *See Abbott*, 705 F.3d at 713 (noting that the existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest). But, as previously discussed in conjunction with Zakowski, at the relevant time, the defendants reasonably believed that the statute of limitations had *not* run. Indeed, in overturning Larson's conviction, the Wisconsin Court of Appeals found that the 1993-94 version of Wis. Stat. § 939.74(2)(a) was "*ambiguous* with regard to whether a prosecution for attempted first-degree intentional homicide may be commenced 'at any time.'" *Larson*, 801 N.W.2d at 345 (emphasis added). Because "[r]easonable minds could differ as to the meaning of the statute," there was nothing improper in pursuing Larson. *Id.*

Regarding the fourth claim—involving conspiracy—Larson alleges that the Brown County Defendants and Zakowski "conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2) (second clause). To succeed on this claim, however, Larson must show that the conspiracy was motivated by racial, or other class-based discriminatory animus. *See Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994). Larson has not made this showing. Accordingly, the court will grant summary judgment in favor of the Brown County Defendants on all claims.[10]

---

[10] Like Zakowski, Kocken may also be dismissed due to Larson's failure to show any personal involvement whatsoever. And because there is insufficient evidence of a deprivation of constitutional rights, any official capacity or *Monell* claim against any of the defendants necessarily fails. *See*

13

# V. CONCLUSION

In opposing summary judgment, Larson argues as follows: "Plaintiff was sentenced to 15 years in prison. The defendants are responsible for that. Whom else would be responsible if the defendant[s] are not?" (Pltf. Resp. Brown Cnty. Defs. at 17.) In other words, Larson (understandably) seeks to hold someone accountable for the significant amount of time he spent serving a prison sentence that was ultimately reversed. But at this stage of the litigation, Larson must support his allegations with *evidence* of wrongdoing, such as deposition testimony, discovery responses, or affidavits/declarations based on personal knowledge. Instead, the admissible evidence only shows that the defendants acted in a constitutionally permissible manner in pursuit of Larson, based on a reasonable interpretation of an undisputedly ambiguous statute. Accordingly, the court must dismiss this action.

**NOW THEREFORE IT IS ORDERED** that Pollard's motion for summary judgment be and hereby is **GRANTED**, and all claims against Pollard be and hereby are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Zakowski's motion for summary judgment be and hereby is **GRANTED**, and all claims against Zakowski be and hereby are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that the Brown County Defendants' motion for summary judgment be and hereby is **GRANTED**, and all claims against the Brown County Defendants be and hereby are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE**;

---

*Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008) (collecting cases).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this <u>2nd</u> day of August 2013, at Milwaukee, Wisconsin.

                                        **BY THE COURT:**

                                        <u>s/ William E. Callahan, Jr.</u>
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge